**IT IS ORDERED as set forth below:**

**Date: August 31, 2022**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN THE MATTER OF: | : | CASE NUMBER |
|---|---|---|
|  | : |  |
| JEFFREY PAUL REID, | : | NO. 19-62673-LRC |
|  | : |  |
|  | : | IN PROCEEDINGS UNDER |
|  | : | CHAPTER 13 OF THE |
| Debtor. | : | BANKRUPTCY CODE |

## ORDER

Jeffrey Paul Reid ("Debtor") objects to a claim filed by his former spouse, Angela Link ("Link") against his Chapter 13 bankruptcy estate because the amount is overstated and the claim is not entitled to priority status as a "domestic support obligation" ("DSO"). Debtor has moved for summary judgment sustaining his objection (Doc. 97, the "Motion"). In opposition, Link asserts that genuine issues of material fact remain in dispute as to the intent of the parties at the time of their divorce and whether Link is entitled to attorney's

fees for pursuing a contempt action against Debtor in Cobb County Superior Court (the "State Court"). This matter constitutes a core proceeding over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 1334; 157(b)(2)(B).

I.     Undisputed Material Facts[1]

Debtor and Link were divorced on or about May 7, 2018, pursuant to an order of the Cobb County Superior Court (the "State Court") and an amended final decree filed on or about September 24, 2018 (the "Final Decree,"). Debtor's Statement of Undisputed Material Facts ("SUMF"), ¶ 6; Doc. 83 (Debtor's Hearing Exhibit 2). In the section titled "Debts," the Final Decree states that the parties "have a joint debt with the IRS" resulting from a jointly filed tax return for the year 2015. The Final Decree provides that "[Debtor] shall be responsible for this debt." It appears that Debtor then filed married, filing separately for tax year 2016, and Debtor owed money as a result. The Final Decree clarifies that only Debtor is obligated on this debt and that Link is not responsible for this debt. The

---

[1] Pursuant to BLR 7056-1(a)(1), Debtor was required to "attach to the motion a separate and concise statement of the material facts, numbered separately, as to which the movant contends no genuine issue exists to be tried." In turn, Link was required to attach to her response a separate and concise statement of material facts, numbered separately, as to which she contends a genuine issue exists to be tried. BLR 7056-1(a)(2). The Court notes that Debtor included a statement of material facts, albeit not as a separate document, but Link has failed to respond to each of Debtor's numbered material facts. Accordingly, all material facts contained in Debtor's statement that were not specifically controverted in Link's statement are deemed admitted. BLR 7056-1(a)(2).

2

Final Decree also states, "Other than as set forth above, each party shall be solely responsible for his and her individual debts."

At the time of the divorce, Link was working 20 hours per week at $15 per hour, while Debtor was earning $2,449.20. SUMF, ¶ 8. The Final Decree ordered that (1) Debtor would pay $500 per month in child support to Link; (2) Link would receive $70,000 of Debtor's 401k account and Debtor would receive the remaining $51,000; (3) Link was awarded the marital home and all its contents, but was not required to pay the monthly mortgage payment because foreclosure of the home was expected in the near future; (4) Link was awarded a 2015 Toyota that was encumbered and ordered to pay the payment on the debt, while Debtor was awarded a 2004 Toyota that was not encumbered; (5) Debtor was ordered to pay the parties' joint tax liability for the tax year 2015 (the "2015 Tax Obligation"); and (6) both parties waived any right to alimony. *Id.*, ¶¶ 7, 9, 10, 11-12.

Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 12, 2019. *Id.*, ¶ 1. Link filed Proof of Claim Number 3 in the amount of $9,350.07, which was comprised of $2,476.07 for reimbursement for medical bills, $3,694 arising from the IRS' application of Link's tax refunds to the payment of Debtor's 2015 tax liability; and attorney's fees of $3,180 for filing a contempt action against Debtor in the State Court.

3

*Id.*, ¶ 5; *see also* Proof of Claim Number 3 (the "Claim"). Debtor objected to the Claim, and the parties entered a consent order regarding a portion of the Claim. *Id.*, ¶ 4; *see also* Doc. 64. Link filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Case Number 21-51633, "Link's Case"). Link received her discharge. *Id.*, ¶ 13.

In the Motion, Debtor asserts that the amounts sought for attorney's fees and the debt arising from the loss of Link's tax refund: (1) should not exceed $994; and (2) are not entitled to priority treatment because they are not debts arising from a DSO within the meaning of the Bankruptcy Code. In response, Link argues that facts remain in dispute that are necessary for the Court to consider when determining whether the parties intended Debtor's payment of the debt at issue to provide support for Link. The facts Link believes are relevant to this inquiry include: (1) the parties were married for sixteen years; (2) Debtor was a long-term employee of Verizon, where he earned between $80,000 and $100,000 per year; (3) after the parties separated, Link was not able to find full-time employment; (4) shortly after the parties' minor child turned 18, Debtor was quickly able to obtain a higher-paying position; (5) early in the marriage, the parties had agreed that Link would give up her career to be a stay-at-home parent; during the divorce negotiations, the parties agreed that Debtor would pay the 2015 Tax Obligation and give the marital residence with its

4

equity to Link in exchange for not being responsible for payment of alimony and additional child support; (6) during the marriage, Debtor was responsible for filing the tax returns, and the 2015 tax liability was the result of Debtor's failure to report properly his income to the Internal Revenue Service (the "IRS"); (7) the IRS seized Link's 2016 and 2017 tax refunds to pay the 2015 Tax Obligation; and (8) Link was forced to hire an attorney to enforce the terms of the divorce decree and incurred attorney's fees in the process. Additionally, as a matter of law, Link argues that the fact that she has not been awarded attorney's fees by the State Court is not a bar to this Court's determining that such fees are also in the nature of support.

"Because [Link] would bear the burden of proof at trial, [Debtor] may support his motion by either showing 'an absence of evidence to support [Link's]'s case' or, alternatively, by presenting 'affirmative evidence demonstrating that [Link] will be unable to prove [her] case at trial.'" *In re Colin*, 546 B.R. 455, 459 (Bankr. M.D. Ala. 2016). Debtor has essentially relied on the plain language of the Final Decree, along with one additional fact regarding the parties' expectation that the marital home would be foreclosed on shortly after the divorce. The Court notes that neither party has followed proper procedure regarding supporting and opposing a motion for summary judgment. Debtor has

5

not cited to any materials in the record to support the portion of his statement of undisputed facts that is not drawn from the Final Decree itself. *See In Re Schweitzer,* 2015 WL 5918031, at *2 (Bankr. N.D. Ohio Oct. 8, 2015) ("The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, 'and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  And Link failed to cite materials in the record, such as an affidavit, to support the additional facts that she asserts remain in dispute and are material. *See In re Lett*, 2021 WL 1821885, at *2 (Bankr. N.D. Ga. May 6, 2021) ("In response, Plaintiff is required to direct the Court to evidence in the record, including any affidavits filed in response to the summary judgment motion, indicating that a dispute exists in facts material to its claims.").  Simply arguing in a brief that additional facts would make a difference to the Court's legal analysis, as Link has done here, does not aid the Court in determining whether an evidentiary hearing can be avoided.

That being said, this Court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick*

*v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). The determination of whether a debt is a DSO is highly factual, there do appear to be disputes of fact that bear on the parties' intent at the time of the divorce, and facts remain unknown to the Court that could bear on this issue (for example, although the Court knows the amount of the 2015 Tax Obligation paid by Link, neither party has disclosed the total amount of the 2015 Tax Obligation). For these reasons, the Court will not grant summary judgment. To guide the parties as they prepare for an evidentiary hearing, the Court includes an analysis of the legal issues.

II.    Analysis

To determine the proper amount and priority of Link's proof of claim, the Court must determine the amount that Link paid toward the 2015 Tax Obligation and whether the 2015 Tax Obligation is a DSO. If it is a DSO, it is entitled to be paid as a priority claim under § 507(a)(1)(A). If it is not a DSO, the amount paid can be allowed as a general unsecured claim. As to the amount, there is no dispute that the IRS withheld Link's 2017 tax refund in the amount of $994 and applied it to the 2015 Tax Obligation. However, the Debtor contends there is no proof that Link's 2016 tax refund was also applied to the 2015 Tax Obligation. Link stated in her brief that the IRS withheld her 2016 tax refund in the amount of $2,799, but "had not yet applied that amount to the outstanding [2015 Tax

7

Obligation] due to a pending innocent spouse petition filed by [Link]." In her statement of material facts that remain subject to dispute, Link states that the IRS seized her 2016 and 2017 tax refunds to pay the 2015 Tax Obligation. Thus, the Court assumes that Link will be able to present evidence at an evidentiary hearing that the IRS withheld her 2016 tax refund to pay the 2015 Tax Obligation. Again, it would have been helpful if Link had filed an affidavit so stating.

As to whether the 2015 Tax Obligation is a DSO, the Bankruptcy Code defines a DSO as "a debt that accrues before, on, or after the [petition date], including interest . . . that is owed to or recoverable by . . . a former spouse . . . [and is] in the nature of alimony maintenance or support . . . ." 11 U.S.C. § 101(14A);[2] *see also In re Coon*, 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014). To determine whether a debt meets this definition, a "court should undertake a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support." *Cummings v. Cummings*, 244 F.3d 1236, 1265 (11th Cir. 2001). Further, this inquiry "is an issue of federal law" and a court "cannot rely solely on the label used by the parties." *Id*. The main

---

[2] Section 101(14A) was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pre–BAPCPA case law as to whether a debt is "in the nature of support" within the meaning of section 523(a)(5) remains applicable to a determination as to whether a debt is "in the nature of alimony, maintenance, or support" under section 101(14A). *In re Bolar*, 2008 WL 7880900, at *2 (Bankr. N.D. Ga. Nov. 5, 2008).

8

focus of the Court should be on the intent of the parties, and "all evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant." *Id*. "Debts payable to third parties may be viewed as maintenance or support obligations and the protection afforded by the debt assumption and a 'hold harmless' agreement arising in a divorce may provide essential maintenance or support so as to fall within § 523(a)(5)." *Rogers v. McGahee*, 278 Ga. 287, 289, 602 S.E.2d 582, 585 (2004) (citing *In the Matter of Fussell*, 303 B.R. 539, 545 (Bankr. S.D.Ga. 2003)). "When the debtor former spouse agrees in a divorce decree to pay taxes or hold the other spouse harmless from the taxes, 'that agreement as to liability is subject to a determination under 11 U.S.C.A. § 523(a)(5) and (a)(15).'" *Id*. (quoting *In re Hoberg*, 300 B.R. 752, 766 (Bankr. C.D. Cal. 2003)).

The factors most recently identified by the Eleventh Circuit Court of Appeals for consideration are: (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and (8) how the obligation is treated for tax purposes. *In re Benson*, 441 F. App'x 650, 651 (11th Cir. 2011); *see also In re Silver*, 2013 WL

9

4498813, at *6 (Bankr. N.D. Ga. July 22, 2013) (considering additional factors, including whether the obligation appears to have been imposed as a means of balancing the disparate incomes of the parties, whether the obligation is payable in a lump sum or in installments, the respective physical health of the spouses and their work experience and levels of education, whether additional amounts of "alimony" were awarded, the length of the marriage, whether there was an actual need for support at the time of the divorce, the number and age of children, and the standard of living during the marriage). These factors are designed to help the Court decide whether the obligation was intended for the support of the debtor's former spouse or children, rather than as a means for equitably dividing property and debts. "'[N]o single factor is controlling or more important than any other.'" *Id*. (quoting *In re Plyant*, 467 B.R. 246, 252 (Bankr. M.D. Ga. 2012)). "The creditor has the burden of proving by the preponderance of the evidence that the parties intended the obligation as support." *Id.* (citing *Cummings*, 244 F.3d at 1265); *see also In re Bolar,* 2008 WL 7880900, at *3 (Bankr. N.D. Ga. Nov. 5, 2008) ("The Creditor has the burden of proof as to the nature of her claim."); *In re Krueger*, 457 B.R. 465, 475 (Bankr. D.S.C. 2011); *In re Cole*, 548 B.R. 132, 152 n.30 (Bankr. E.D. Va. 2016) ("In this case, the burden rests upon [the former spouse] to prove that the award of attorney's fees is a domestic support

10

obligation.").

Debtor is correct that some of these factors appear to weigh in favor of a finding that the 2015 Tax Obligation is not a DSO. These include the labels given the obligation in the Final Decree, the fact the 2015 Tax Obligation was payable in a one-lump sum and would not terminate upon the death or remarriage of Link, the fact that Link waived her right to alimony, the fact that the parties were earning relatively similar amounts at the time of the agreement, if one considers the fact that Link was working only part-time, and the fact that Link was awarded more than half of the marital assets.

Yet, other factors seem to support Link's argument that the parties intended Debtor's payment of the 2015 Tax Obligation as support for Link. For example, Link contends that the parties agreed that Debtor would pay no alimony and lower child support in exchange for paying the 2015 Tax Obligation and for giving Link the equity in the marital home. The Eleventh Circuit Court of Appeals in *Benson* found that, while the wife in that case "waived any right to claim alimony, she did so in consideration for the benefits she received in the agreement." *Benson*, 441 F. App'x at 651. This is exactly what Link contends in the present case. Link also points to additional facts to support the conclusion that the financial positions of the parties were disparate at the time of the agreement. Although both Debtor

11

and Link were working when the agreement was made, and while Debtor was earning less income working at Lowe's than he was at his former employment with Verizon, Link argues that Debtor clearly had the greater earning potential and work experience. In support, she points to the fact that she was only able to find part-time employment because of her long absence from the workplace during the parties' sixteen-year marriage and the fact that Debtor previously earned between $80,000 to $100,000 and was able to quickly find a new, higher-paying position shortly after his child support obligation ended.

Given the existence of factors that could support a finding in favor or either party and what appear to be possible facts in dispute, the Court finds it would be helpful to conduct an evidentiary hearing. Accordingly, the Court will exercise its discretion to deny summary judgment as to the 2015 Tax Obligation.

As to the issue of Link's entitlement to attorney's fees, Link contends that, because Debtor failed to pay the 2015 Tax Obligation as agreed, she was forced to hire an attorney to file the contempt action in the State Court. Accordingly, Link argues that she is entitled to attorney's fees under O.C.G.A. § 19-6-2(a)(1), which provides: "The grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court

12

arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be . . . [w]ithin the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party." O.C.G.A. § 19-6-2(a)(1). Georgia courts interpreting this statute have held that an award of attorney's fees in a contempt action arising out of a divorce case depends on the financial circumstances of the parties, not their wrongdoing, and that the award is to be made with the purpose of ensuring effective representation for both spouses. *Cole v. Cole*, 333 Ga. App. 753 (2015); *Cason v. Cason*, 281 Ga. 296, 299-300 (2006); *Roth v. Crafton*, 363 Ga. App. 254, 258 (2022). Thus, fees may be awarded based upon the financial circumstances of the parties. Further, Georgia courts have held that attorney's fees cannot be awarded under this statute in a contempt action where a finding of contempt is not authorized. *See Brochin v. Brochin*, 294 Ga. App. 406 (2008) (stating that "[w]here a finding of contempt is not authorized, an award of attorney fees under O.C.G.A. § 19-6-2 also is not authorized."); *see also McGahee v. Rogers*, 280 Ga. 750, 754 (2006); *Boyett v. Landon*, 238 Ga. 175 (1977).

Thus, for Link to be entitled to attorney's fees under this statute for filing the

contempt action in State Court, there must first be a finding that Debtor was in contempt of the Divorce Decree. Link submits that she "filed [the] contempt action in the [State Court] seeking damages in the amount of the tax refund that she was due and the attorney's fees resulting from [D]ebtor's failure to abide by the Final Order;" she served Debtor with the contempt action, but he failed to respond and was in default; and before the State Court could enter judgment against Debtor, Debtor filed bankruptcy, preventing a further hearing from going forward. Debtor argues that the State Court cannot now find him in contempt or award attorney's fees that would be entitled to priority status as a DSO in this case.

The Court agrees that, for purposes of Debtor's claim objection, any award of attorney's fees for the contempt action could not become part of Link's claim in this bankruptcy case. If Debtor has an obligation to pay Link's attorney's fees and such obligation is a DSO, it was an unliquidated and unmatured claim on the Petition Date and, therefore, not properly part of an allowed claim payable through Debtor's Chapter 13 plan. *See* 11 U.S.C. § 502(b)(5) ("Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent

14

that-- . . . (5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title.").[3] For this reason, the Court will grant summary judgment to Debtor as to the issue of whether Link's claim can include amounts for attorney's fees.

III.   Conclusion

For the reasons stated above,

IT IS ORDERED that the Motion is **DENIED** in part and **GRANTED** in part;

IT IS FURTHER ORDERED that the portion of Link's proof of claim that seeks attorney's fee incurred in the contempt proceeding is **DISALLOWED** pursuant to 11 U.S.C. § 502(b)(5);

IT IS FURTHER ORDERED that the parties shall appear for a **telephonic**

---

[3] If Link is entitled to fees under O.C.G.A. § 19-6-2, such an obligation would not be discharged upon completion of Debtor's plan, however. *Id*., § 523(a)(5); § 101(5) (defining a claim to include unliquidated and unmatured rights to payment); *In re Marshall*, 489 B.R. 630, 635 (Bankr. S.D. Ga. 2013); *Matter of Rogers*, 164 B.R. 382, 392 (Bankr. N.D. Ga. 1994). Given the necessity for the State Court to find Debtor in contempt, the Court rejects Link's suggestion that this Court should liquidate her claim for attorney's fees. The State Court is the appropriate forum to do so. *See Bochin,* 294 Ga. App. at 408 (stating that "[g]enerally, a contempt motion must be filed in the allegedly offended court."); *In re Babatunde*, 2012 WL 5334736 at *2 (Bankr. N.D. Ga. 2012) (J. Murphy) (declining to award fees under O.C.G.A. § 19-6-2 because "bankruptcy courts have no role in assessing the amount of support owed to an ex-spouse" and that "[s]uch [a] determination is clearly in the province of the state courts"). Further, the Court questions whether the State Court would award fees, given the language in the Divorce Decree waiving alimony. *See Dovel v. Dovel*, 352 Ga. App. 423, 425 (2019) ("When, as here, parties enter an agreement barring the recovery of alimony, an award of attorney fees under OCGA § 19-6-2 likewise is barred.") (citing *Vakharwala v. Vakharwala*, 301 Ga. 251, 254-255 (2017); *McClain v. McClain*, 237 Ga. 80, 81-82 (1976)).

scheduling conference on **October 4, 2022, at 1:30 p.m.** in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia.  The scheduling conference will be held **telephonically**.  To join the conference, dial 833-568-8864 and enter the access code 161 346 1602.

## END OF DOCUMENT

**Distribution List**

Alexander Gray Hait
Hait & Kuhn
Suite 100
185 Stockwood Drive
Woodstock, GA 30188

Jeffrey Paul Reid
2169 Brickton Xing
Buford, GA 30518

Melissa J. Davey
Standing Chapter 13 Trustee
Suite 2250
233 Peachtree Street NE
Atlanta, GA 30303

J. Daniel Howard
Law Office of J. Daniel Howard
Suite 160
11720 Amber Park Drive
Alpharetta, GA 30009